## In re Vermont Public Power Supply Authority

[440 A.2d 140]

No. 64-81

Present: Barney, C.J., Billings, Hill and Underwood, JJ., and Larrow, J. (Ret.), Specially Assigned

Opinion Filed November 16, 1981

Motion for Reargument Denied January 4, 1982

*Paul, Frank & Collins, Inc.*, Burlington, and *Sarah E. Vail*, Chester, for Appellants.

*John D. Paterson* and *Jon Anderson* of *Paterson, Gibson, Noble & Goodrich*, Montpelier, for Appellee.

**Underwood, J.** This case involves an appeal of a Public Service Board decision to deny intervenor status in a contested case decided by the Board to Seven Ratepayers who purchase electricity from the Village of Ludlow Electric Light Department. The case concerned a six-million-dollar loan taken out by the Vermont Public Power Supply Authority (VPPSA) without the prior approval of the Board. VPPSA is a political subdivision of the State of Vermont and was formed in 1979 to plan, develop, and finance new electrical sources for its members, which include the Village of Ludlow, ten other municipalities and one electric co-operative. The Seven Ratepayers are the Town of Cavendish, Cavendish Town School District, the Castle Inn, Inc., and four individual residents, all from Cavendish.

The Seven Ratepayers contend that they were entitled to intervene as a matter of right, or in the alternative, that the Board abused its discretion when it denied them permissive intervention. We hold that they were entitled to intervene as a matter of right, and therefore do not reach the issue of permissive intervention.

VPPSA negotiated a six-million-dollar loan with the Chase Manhattan Bank of New York City to carry out its mission, and on July 21, 1980, executed its promissory note to the Bank. VPPSA intended to use the proceeds from this loan to finance 30% of the research and development costs for the City of Burlington Electric Department's woodchip plant; to finance 40% of the research and development costs for the Town of Springfield's proposed hydroelectric project on the Black River; to finance research and development costs for a series of hydroelectric facilities on the Missisquoi River in northwestern Vermont; and to finance development of hydroelectric projects on the Saxtons River near Bellows Falls and on the Connecticut River near Windsor, and of nuclear plants in New Hampshire and Connecticut.

VPPSA is not authorized to and does not intend to use any portion of the loan on construction at any of these sites, only for research and development.

VPPSA says that it did not seek or obtain the approval of the Board, pursuant to 30 V.S.A. § 108, before it negotiated the loan and signed the six-million-dollar note because it did not believe that statute applied to VPPSA. VPPSA waited until October 17, 1980, nearly three months after the note was executed, to notify the Board by letter of the July 21, 1980, loan. The letter described the terms of the loan agreement and told the Board, "The underlying security for the note to Chase is provided by participation agreements between the [VPPSA] members and [VPPSA]," entered into only after an affirmative vote of the qualified voters of each municipality in accordance with 30 V.S.A. § 5017.

The Board treated the letter from VPPSA's attorney as a petition for a declaratory ruling to determine whether the loan was subject to regulation under 30 V.S.A. § 108(a), and if so, as a petition for consent of the Board, pursuant to 30 V.S.A. § 5031(a)(4), to VPPSA's execution of the note. Hearing before the Board was noticed for November 18,

1980. VPPSA contested the Board's jurisdiction to conduct such a hearing.

To intervene as a matter of right, the Seven Ratepayers had to claim an interest relating to the transaction which is the subject of VPPSA's "petition" to the Board. V.R.C.P. 24(a).

The Seven Ratepayers claim as their interest their obligation to pay a portion of the principal and interest on the loan by way of the electric rates they pay to the Village of Ludlow Electric Light Department. The Town of Cavendish and the Cavendish Town School District offer an additional ground. They claim that the significant economic and geographic consequences to them of the Town of Springfield's project on the Black River, which the loan will advance, also satisfies the "interest relating to" requirement.

In opinions filed January 6, 1981, and February 18, 1981, the Board declared that it had jurisdiction to approve or disapprove the note, gave its approval, but found that the interests of the Seven Ratepayers were inadequate to support intervention as a matter of right. The Board said their interests were too remote or contingent, and not direct, substantial and significantly protectible. The Board cited *United States* v. *Carrols Development Corp.*, 454 F. Supp. 1215, 1219 (N.D.N.Y. 1978); *Schott* v. *Baker*, 132 Vt. 564, 326 A.2d 157 (1974); *In re Estate of Callahan*, 114 Vt. 252, 44 A.2d 162 (1945); as well as one of its own prior decisions, *Petition of New England Tel. & Tel. Co.*, Docket No. 3806 (June 3, 1974), as authority for its decision.

The Vermont Administrative Procedure Act gives all parties to a contested case the opportunity "to respond and present evidence and argument on all issues involved." 3 V.S.A. § 809(c). The opportunity is important because the Board's decisions must be based on the evidence. 3 V.S.A. § 809(g). "Party" is defined by the act to include "each person . . . properly seeking and entitled as of right to be admitted as a party." 3 V.S.A. § 801(5).

The act does not define the circumstances which entitle a would-be intervenor to intervention as of right, nor has the Board promulgated rules on the subject. The parties

to this appeal and the Board agree, however, that V.R.C.P. 24 provides appropriate criteria for deciding this issue. Without expressing an opinion as to whether the Board may, by rule, adopt more restrictive criteria, we hold that in the absence of other standards, V.R.C.P. 24 controls.

V.R.C.P. 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Board's precedents dealt with the "relating to" requirement. In *United States* v. *Carrols Development Corp.*, *supra,* intervenor status was denied to the lessor of property occupied by movie theaters who sought intervention to oppose a proposed consent agreement in a civil antitrust action. The interest he asserted were possible losses he would suffer if the theater chain was unable to divest itself of several theaters, and the United States then refused to exercise its discretion to permit continued operation of the theaters. The interest asserted was thus contingent on the nonoccurrence of two events.

In *Schott* v. *Baker, supra,* intervention was not denied because no interest existed. This Court freely conceded that the would-be intervenors in fact had the necessary interest. Rather, we refused to reverse a trial court which had properly denied intervention where an interest which should have been demonstrated below was not.

■ *In re Estate of Callahan, supra,* concerned permissive intervention, and antedated the Administrative Procedure Act. *Petition of New England Tel. & Tel. Co., supra,* one of the Board's own decisions which it cited as precedent, considered the question of whether intervention would aid a prompt decision. While this may be an adequate ground to deny permissive intervention, it is no basis for denying intervention of right. V.R.C.P. 24(a).

None of the precedents cited by the Board are applicable. The Seven Ratepayers are each directly interested in the outcome of the hearing. Their source of electricity, the Village of Ludlow Electric Light Department, is contractually obligated to pay for its portion of the loan. In the event that some other participant defaults, Ludlow's obligation will be further increased. VPPSA Note Case, PSB No. 4497, Finding 12 (Jan. 6, 1981).

The municipal utility's liability to VPPSA is required by the Legislature to be shouldered by the ratepayers. "These obligations . . . shall constitute special obligations of these municipalities payable solely from the revenues and other moneys derived by them from their electric departments or systems." 30 V.S.A. § 5013(b).

VPPSA argues that the Seven Ratepayers' interests are insufficient because:

1. The initial payment on the note is not due until July 1, 1984.

2. The Village of Ludlow Light Department, and thus the ratepayers, will be relieved of responsibility if any of the projects studied advance to the construction stage and the Village then decides not to participate in that project.

3. Note payments to VPPSA can't be passed on to the ratepayers without a rate adjustment which might not be granted.

4. Any costs which might be borne by the ratepayers would be shared among all of the electric customers of the Village, so the appellants' share is de minimis.

None of these reasons is persuasive. First, without regard to when the note is due, the Village will be liable the moment the Board ratifies the issuance of the six-million-dollar note, and ratepayers are statutorily required to shoulder that liability. Secondly, it is nonliability which is contingent. For the Seven Ratepayers to escape repaying the loan, electrical demand must keep rising, interest rates prevailing at the time must permit issuance of construction bonds, investors must buy them, the project must be completed, and the Village must decide not to participate. Each of these occurrences

is far from a certainty, especially in light of the present economic climate. Contingent nonliability will not divest a party of the right of intervention where liability exists. Third, 30 V.S.A. § 5013(b) requires ratepayers to shoulder the burden of this obligation. We can imagine circumstances which would justify a Board refusal to apply the statute in a particular case. Intervention of right, however, is not subject to figments of the imagination. Finally, the Legislature itself has resolved any doubts about the size of the Seven Ratepayers' interest. 30 V.S.A. § 208 allows a single company or five individuals to attack utility practices. This provision clearly indicates the Legislature's determination that those who wish to do so are to be allowed to have a voice in power supply issues. Intervention allows ratepayers to assert their own interests in appropriate cases.

Thus we conclude that the interests of the Seven Ratepayers in the loan are sufficient to entitle them to intervene as a matter of right. We turn, then, to the question of whether they are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest." V.R.C.P. 24(a).

Since 30 V.S.A. § 5013(b) requires ratepayers to bear the utility's share of obligations owed to VPPSA, they must assert their interests in shaping the terms and uses of the note before the obligation arises if they are to have any influence at all. A Board finding that a proposed note is consistent with the general good of the state must precede issuance. Without such finding, no liability may attach. Once such a finding is made, the note may be issued and ratepayers obligated. Thus the hearing provides their only opportunity to contest the need for the note, the terms for repayment and the uses contemplated.

Any disposition on the merits of the loan by the Board, without prior participation in the hearing, will violate the Seven Ratepayers' right to intervene "unless [their] interest is adequately represented by existing parties." V.R.C.P. 24(a). VPPSA argues that the Seven Ratepayers have failed to prove inadequate representation. However, they bear no burden of proof on this issue. Intervention is to be allowed, once the other conditions have been shown,

unless the Board determines that representation will in fact be adequate. 7A C. Wright & A. Miller, Federal Practice and Procedure § 1909, at 521 (1972). Further, the degree of inadequacy required "should be treated as minimal." *Trbovich* v. *United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972).

The case cited by VPPSA is not to the contrary. *Moosehead Sanitary District* v. *S. G. Phillips Corp.*, 610 F.2d 49 (1st Cir. 1979), dealt with a situation in which the would-be intervenor shared an ultimate goal with a party. That situation creates a presumption of adequacy which may be overcome by a showing of adversity of interests, collusion, or nonfeasance.

In hearings before the Board, VPPSA asserted its interests, which reflect the terms of the loan participation agreement with its members. The State of Vermont represented the interests of the public, or the State of Vermont, 30 V.S.A. § 217, which may be, but are not necessarily identical. General counsel for the Board was obligated to pursue the general good of the State. 30 V.S.A. § 108. The Seven Ratepayers, by contrast, were denied the right to represent their own, private interests. None of the other parties was empowered to represent these Seven Ratepayers' interests, none was as well-equipped to do so as they were, and, the record shows, none in fact did so.

Whether the private interests of these particular ratepayers conflict with vague notions of "the general good" or the "public interest" remains to be seen. But it is the cumulation of the private interests of each of Vermont's citizens which produces the public interest or the general good, and not the other way around. The Legislature has attempted to provide some representation for the citizenry when no private parties come forward to contest the issues involved, or the parties which do come forward do not fairly represent the needs of most Vermonters. 30 V.S.A. § 217. That provision, however, does not preclude those who wish to come forward on their own from doing so.

Finally, VPPSA contends that even though error exists, reversal is unwarranted unless prejudice is shown. However, it is now thoroughly settled that a would-be inter-

venor may appeal a denial of intervention and the appellate court will reverse if it concludes that he was entitled to intervene of right. See cases collected at 7A C. Wright & A. Miller, *supra,* § 1923, at 628.

*Reversed and remanded for further proceedings consistent with this opinion.*