## Re Chittenden Recycling Services and Chittenden Solid Waste District (Casella Waste Management, Inc., Appellant)

[643 A.2d 1204]

No. 93-419

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed May 27, 1994

---

*Charles F. Storrow* of *Kimbell & Storrow,* Montpelier, for Appellant.

*Jon T. Anderson* and *Andrew H. Montroll* of *Burak & Anderson,* Burlington, for Appellee.

*Jeffrey L. Amestoy,* Attorney General, and *John W. Kessler,* Assistant Attorney General, Montpelier, for Amicus Curiae State.

**Johnson, J.** Casella Waste Management, Inc. appeals from an order of the Environmental Board Waste Facility Panel denying it party status in proceedings under Act 250 and Act 78 to permit and certify a materials recovery facility proposed by the Chittenden Solid Waste District (District). We affirm.

The District is a union municipal district, formed in 1987 to comply with Act 78 and representing all of the organized municipalities in Chittenden County except Bolton and Underhill. Its purpose is to provide for the management of solid waste generated by its member municipalities. To advance its recycling program, the District planned a recycling center called a material recovery facility (MRF), designed to accept and process recyclables in mixed rather than in presorted form, which, according to the District, offers benefits to consumers and haulers.

The District applied for two permits to operate the MRF, an Act 78 interim certification from the Agency of Natural Resources (Agency) and an Act 250 land use permit from the District #4 Environmental Commission. Casella opposed interim certification of the MRF under Act 78, as proposed by the secretary of the Agency. When interim certification was granted, Casella sought party status as an appellant before the Waste Facility Panel, arguing that under 10 V.S.A. § 6102(c), "a person shall be entitled to participate as a party under the standards for party status in [V.R.C.P. 24]" and that it qualified. The Panel denied Casella party status.

Casella also moved to intervene as a party in the Act 250 permitting process. The Commission allowed Casella to participate as a provisional party, postponing a final ruling until after the hearing. At that time the Commission denied party status, concluding that Casella "failed to show how its property interest would be affected by the project," and that it "failed to show how it could materially assist the Commission by providing testimony or cross-examination." The Com-

mission issued the Act 250 permit to the District, and Casella appealed to the Waste Facility Panel of the Environmental Board.[1]

The Waste Facility Panel consolidated Casella's appeals and concluded that its interests were insufficient to support party status in either the Act 78 or the Act 250 proceeding. The present appeals followed and are consolidated for review.

## I. *Act 78*

Casella argues that it was entitled to party status in the Act 78 interim certification process of the Agency under 10 V.S.A. § 6102(c), which provides in part that "a person shall be entitled to participate as a party under the standards for party status in [V.R.C.P. 24]."[2] Casella argues that it qualifies under Rule 24(a)(2). To qualify under that rule, Casella had to establish that (1) it had "an interest relating to the property or transaction which is the subject of the action," (2) the disposition of the proceeding before the Panel might "impair or impede [its] ability to protect that interest," and (3) its interest was not adequately represented by existing parties.

The Panel concluded that Casella did not meet the Rule 24(a)(2) elements and denied Casella party status as to the Agency's certification. The Panel reasoned:

> [A]ppellant's interest in preventing illegal flow control does not constitute an interest in the MRF or Certification for purposes of V.R.C.P. 24(a)(2). The Appellant is not financially liable in any respect for the MRF or its operation pursuant to the terms and conditions of the Certification and Permit. While the Appellant has an economic interest at stake as a competitor to the Permittees, it is not one which gives rise to an interest in the Certification or MRF.

---

[1] The Waste Facility Panel of the Environmental Board was created by the Legislature. 1989, No. 218 (Adj. Sess.), § 3, codified at 10 V.S.A. § 6101(a). The Panel has "exclusive jurisdiction to review decisions and hear and determine appeals" from Agency decisions concerning solid waste management facilities. 10 V.S.A. §§ 6101(b), 6104. Appeals from the Panel are treated like appeals from the Environmental Board and are made directly to the Supreme Court. 10 V.S.A. § 6107.

[2] The District argues on appeal that it does not require an Act 78 interim certification permit to operate its recycling center because it is not a solid waste management facility. Accordingly, the District contends that Casella's claims to party status in that proceeding are moot. If the District ever raised this issue before the Agency or the Panel, it did not elect to appeal the clear, if implicit, determination by the Agency and the Panel that interim certification was required. Thus this issue is not before the Court.

■ We note at the outset that the standard of review in this matter is abuse of discretion. *Conservation Law Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 41 (1st Cir. 1992) (construing parallel federal rule). Abuse of discretion requires a showing that the Panel "withheld its discretion entirely or that it was exercised for clearly untenable reasons or to a clearly untenable extent." *Vermont Nat'l Bank v. Clark*, 156 Vt. 143, 145, 588 A.2d 621, 622 (1991). Casella has failed to establish that the Panel abused its discretion.

■ As to the first element required for intervention under Rule 24(a)(2), we agree that Casella has no interest in either the "property" comprising the MRF or the "transaction" involving interim certification of MRF. Casella claims no ownership interest, mortgage, liens or attachments or any other similar interest in the property in question. Neither does Casella demonstrate a greater interest in the subject matter of the interim certification—preventing illegal flow control— than any other member of the public. Casella's memorandum of law before the Panel acknowledged as much, stating as follows:

> Casella's pre-existing recycling enterprise will be directly impacted by the interim certification of the District's recycling facility because operation of the District's recycling facility will be in direct competition with Casella's facility. At a minimum, Casella has an interest in assuring that any interim certification that might be issued by the Panel be conditioned to prohibit the exercise of illegal flow control by the District in the operation of the facility.

The first sentence of the memorandum indicates only that Casella has an "interest" in its own facility, and the second states an "interest" that Casella shares with members of the public who might be affected by the results of any illegal flow control activities by MRF.

■ It is true that 10 V.S.A. § 6605b(b)(1) and (2) set forth certification criteria that touch on economics:

> (b) The secretary shall not issue an interim certification without affirmatively finding:
> (1) that the operation of the solid waste management facility is necessary and will result in some public benefit;
> (2) that there is no present, reasonable, alternative means for waste disposal; . . . .

It is also true that the existence of Casella's facilities bears on this determination. But these economic issues look to the protection of the

general public, not to competitors of the MRF. Cf. *In re Vt. Pub. Power Supply Auth.*, 140 Vt. 424, 432, 440 A.2d 140, 143 (1981) (ratepayers' liability for repayment of loan being financed entitled them to intervene as matter of right). Unlike the ratepayers in *In re Vermont Public Power Supply Authority*, Casella will not have to underwrite the costs of a facility whose construction and operation results in no public benefit or is built in the face of cheaper, reasonable alternatives. Casella may be hurt competitively, but for it to argue that self-interest is to ask the Agency, the Panel, and this Court to ignore the very purposes of 10 V.S.A. § 6605b(b)(1) and (2) in favor of private economic interests.

■ The Panel also found that Casella did not meet the second element for intervention because it failed to establish that disposition of the proceeding before the Panel would impair Casella's ability to protect its interests. Instead, the Panel found that the lawsuit Casella brought against the MRF regarding illegal flow control, which is now pending before the Chittenden Superior Court, is "another available remedy." Casella argues that this conclusion is erroneous because it might not win its lawsuit. Although this is true, it does not undermine the Panel's conclusion that Casella's intervention in the Act 78 proceeding was unnecessary because Casella had another forum in which to protect its "interest."

## II. *Act 250*

Casella also argues that it was entitled to intervene in the Act 250 permitting process as a party under Board Rule 14(B)(1)(a), which states:

(B) Parties by permission

(1) The board or a district commission may allow as parties to a proceeding individuals or groups, including adjoining property owners, not otherwise accorded party status by statute upon petition if it finds that the petitioner has adequately demonstrated:

(a) That a proposed development or subdivision may affect his interest under any of the provisions of section 6086(a) . . . .

Casella identified criteria under 10 V.S.A. § 6086(a)(1)(B) (waste disposal) and (a)(10) (conformity with local or regional plan or capital program under chapter 117 of Title 24) as interests affected by the proposed facility.

In denying Casella party status in the Act 250 proceeding, the Waste Facility Panel stated:

[T]he Appellant claims that the interest affected in this proceeding is the protection of a pre-existing investment, that is, the Appellant's competing recycling facilities in Chittenden and Addison counties. This is not a criterion under 10 V.S.A. 6086(a). The Panel concludes that the Appellant has failed to demonstrate that the MRF may affect its interest under any of the Act 250 criteria.

Accordingly, the Panel denied Casella's request for party status under Board Rule 14(B)(l)(a).

■ When reviewing Environmental Board interpretations of Act 250 and of its own rules, we accord the Board a high level of deference. *Vermont Agency of Natural Resources v. Duranleau*, 159 Vt. 233, 237, 617 A.2d 143, 146 (1992). Absent compelling indications of error, this Court will sustain its interpretations on appeal. *In re Capital Inv., Inc.*, 150 Vt. 478, 482, 554 A.2d 662, 665 (1988). Rulings of administrative agencies on party status in Act 250 proceedings "are infused with a presumption of validity and cannot be overcome unless clear and convincing evidence is presented." *In re Great E. Bldg. Co.*, 132 Vt. 610, 612, 326 A.2d 152, 153 (1974).

Casella fails to offer a reason against deference in this case. Despite invoking two provisions of § 6086, its only argument with the grant of an Act 250 permit to the District was protection of its own business from competition. Casella argued that this interest implicates Act 250 criterion 1(B) (10 V.S.A. § 6086(a)(1)(B)), which states:

A permit will be granted whenever it is demonstrated by the applicant that, in addition to all other applicable criteria, the development or subdivision will meet any applicable health and environmental conservation department regulations regarding the disposal of wastes, and will not involve the injection of waste materials or any harmful or toxic substances into ground water or wells.

Casella then argues that the Environmental Conservation Department Regulations referred to in criterion 1(B) include the Solid Waste Management Rules promulgated by the Department of Environmental Conservation. Solid Waste Management Rule 6-306(a) incorporates 10 V.S.A. § 6605b—the same statute at issue in the Act 78

proceedings discussed in part I.[3] Casella thus claims an interest because the District must show that the facility is necessary and that Casella's own facilities are not a reasonable alternative to the MRF.

Casella's argument fares no better in this context than it did in the Act 78 context. Nowhere does criterion 1(B) speak of the competitive marketplace, nor is there even a hint that the District's facility or operations should be subject to utility-like regulation or that any provider of similar services should be able to achieve the status of a regulated monopoly. Rather, "[t]he nature and purpose of Act 250 is to protect and conserve the environment of the State and to insure that lands slated for development are devoted to uses which are not detrimental to the public welfare and interest." *In re Great E. Bldg. Co.*, 132 Vt. at 614, 326 A.2d at 154. Any economic issues implicated by Act 250 and 10 V.S.A. § 6605b(b)(1) and (2) are for the protection of the general public. Thus, Casella was properly denied party status because its interests are no different from those of the general public. See *id.* (property owners were properly denied party status, as their interests in traffic flow were "subsumed by those of the larger unit, the municipality").

*Affirmed.*

---

[3] The Solid Waste Management Rules exempt all recycling except: "(A) [r]ecyclable materials that are stored for six (6) months, [and] (B) [r]ecyclable materials that the Secretary determines pose a risk to public health and safety, the environment or may cause a nuisance." Solid Waste Management Rule 6-301(b)(4). Because the Panel made no findings on these questions, we shall assume the rules apply.