NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 97

Nos. 2017-062 & 2017-166

| | |
|---|---|
| In re Petition of Green Mountain Power Corporation for Approval to Invest in Hydroelectric Generation Facilities Located Outside Vermont (Allco Renewable Energy Limited, Appellant) | Supreme Court<br><br>On Appeal from<br>Public Utility Commission<br><br>May Term, 2018 |

James Volz, Chair

Thomas Melone of Allco Renewable Energy Limited, New York, New York, for Appellant.

Owen J. McClain of Sheehey Furlong & Behm P.C., Burlington, for Appellee.

PRESENT:  Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1.     **EATON, J.**  Allco Renewable Energy Limited (Allco) appeals the Vermont Public Utility Commission's (PUC)[1] denial of Allco's motion to intervene as a party in proceedings concerning whether Green Mountain Power Corporation (GMP) could purchase power generation facilities outside of Vermont.  Allco argues that it should have been allowed to intervene because it meets the criteria for intervention set out in the PUC's own rules.  In particular, Allco argues that it has a substantial interest in the proceedings both as a ratepayer and as a competing supplier of power.  Allco also appeals the PUC's eventual decision to allow the purchases.  We affirm the PUC's denial of Allco's motion to intervene and accordingly dismiss Allco's second appeal.

---

[1]  The PUC was known as the Public Service Board prior to 2017 and is so referred to in our earlier cases. We refer to the entity as the PUC throughout, even when referring to the period before 2017.

## I. Facts and Procedural History

¶ 2.    In September of 2016, GMP petitioned the PUC for approval to purchase eight hydroelectric power facilities located outside of Vermont.  Specifically, it sought a certificate of public good (CPG) under 30 V.S.A. § 248(a)(1)(A)-(B), which provides that utility companies may not "in any way purchase electric capacity or energy from outside the State" or "invest in an electric generation or transmission facility located outside this State unless the Public Utility Commission first finds that the same will promote the general good of the State and issues a certificate to that effect."

¶ 3.    In deciding whether to grant a CPG, the PUC is directed by statute to consider various criteria.  30 V.S.A. § 248(b).  With respect to the purchase of out-of-state hydroelectric facilities, there are seven relevant factors: (1) whether the purchase is required to meet the need for present and future demand for power service that could not be provided in a more cost-effective manner through conservation programs; (2) whether it will adversely affect system stability and reliability; (3) whether it will result in an economic benefit to the State and its residents; (4) whether it is consistent with the purchaser's own least-cost integrated plan; (5) whether it complies with the electric energy plan created by the Department of Public Service (DPS); (6) whether the facilities will affect any designated outstanding resource waters within Vermont; and (7) whether the facilities can be served by existing or planned transmission facilities.

¶ 4.    In proceedings before the PUC, DPS is present as a party to represent the interests of the people of the State.  30 V.S.A. § 2(b).  Allco, a developer of solar power generation facilities, sought to intervene as an additional party in the CPG proceedings related to the purchase by GMP.

¶ 5.    Intervention in this context is governed by the PUC's own rules, specifically by Rules 2.209(A) ("intervention as of right") and 2.209(B) ("permissive intervention").  While Rule 2.209(A) is "analogous" to Rule 24(a) of the Vermont Rules of Civil Procedure (governing intervention of right in ordinary civil litigation), it is also by design "considerably stricter."

Investigation of Appropriate Principles for Governing Affiliate Transactions, No. 5797, 1995 WL 881075 (Vt. Pub. Serv. Bd. May 19, 1995).  Rule 2.209(A) sets out a three-pronged test for when an applicant has a right to intervene where, like here, there is an absence of any statutory right to do so:

> Upon timely application, a person shall be permitted to intervene . . . when the applicant demonstrates a substantial interest which may be adversely affected by the outcome of the proceeding, where the proceeding affords the exclusive means by which the applicant can protect that interest and where the applicant's interest is not adequately represented by existing parties.

Board Rules: Rules of Practice § 2.209, Code of Vt. Rules 30 000 2000, http://www.lexisnexis.com/hottopics/michie/ [hereinafter Rule 2.000].

¶ 6.  Rule 2.209(B) gives the PUC additional discretion to permit parties to intervene in proceedings.  Rule 2.000 § 2.209(B).  Permissive intervention under this rule requires only "a substantial interest which may be affected by the outcome of the proceeding."  Id.  In addition, in deciding whether to grant permissive intervention the PUC is directed to consider whether there are alternative means for protecting that interest, whether current parties to the proceeding will adequately protect it, and whether intervention would cause undue delay or prejudice to existing parties or the public.  Id.

¶ 7.  Allco offered two theories under which it had a substantial interest that would be adversely affected if GMP were permitted to purchase the out-of-state power facilities.  First, Allco claimed that it would be adversely affected as one of GMP's ratepayers, because of the risk that the out-of-state projects would lead to higher rates in the long run and because the projects would not contribute to the economic development of Vermont.  Second, Allco argued that it would suffer economic harm as a competitor of GMP, because the purchase of out-of-state generation capacity would diminish GMP's demand for Allco's in-state generation facilities.  Allco did not make an argument related to the second prong of the test in Rule 2.209(A) (exclusive means).  With respect

3

to the third prong (no adequate representation), Allco argued that DPS was not qualified to represent its interests at the hearing because there was "at least the potential for a conflict [of] interest."

¶ 8. The PUC's hearing officer denied Allco's motion to intervene, both as of right and on a permissive basis. In his view, Allco lacked a "substantial, particularized interest" in the decision, as required by the first prong of the Rule 2.209(A) test, because its stated interests were not related to the issues to be reviewed at the hearing, that is, those factors listed in 30 V.S.A. § 248(b) as the ones which the PUC must consider in approving the purchase of out-of-state facilities. With respect to the second prong of the Rule 2.209(A) test, he held that Allco could pursue its interests through the State's net-metering program, its standard-offer program, Rule 4.100 (Vermont's implementation of the federal Public Utility Regulatory Policies Act), or bilateral contracts with power companies. With respect to the third prong, the hearing officer found that to the extent that Allco had an interest as a ratepayer, its interest was no different from that of any other ratepayer and could be adequately represented by DPS at a future proceeding that would consider electricity rates. The absence of a substantial interest by Allco in the proceedings was also fatal to its request for permissive intervention.

¶ 9. Allco moved for reconsideration of the denial of its petition to intervene. In its motion Allco made a wide array of arguments, in particular challenging the hearing officer's determination that it had no substantial, particularized interest in the proceeding, and arguing that the officer's decision effectively banned all ratepayers and competitors from intervening as such in proceedings under 30 V.S.A. § 248. The full PUC denied the motion for reconsideration, agreeing on all points with the hearing officer.

¶ 10. After denying Allco's request to intervene, the PUC granted the CPG to GMP for the purchase of the out-of-state facilities. Two cases are now consolidated for our review. The

first is Allco's appeal of the PUC's denial of its request to intervene in the CPG proceedings as a party. In the second case, Allco appeals the grant of the CPG itself.

¶ 11. On appeal, Allco again argues that it has a substantial interest as both a ratepayer and a competitor of GMP. It again suggests that the decisions below have effectively banned ratepayers and competitors from ever intervening in any proceeding under 30 V.S.A. § 248. With respect to the second prong of the Rule 2.209(A) test, Allco argues that the CPG proceeding is the exclusive means to protect its interests and that the test itself violates due process and Chapter I, Article 4 of the Vermont Constitution. With the respect to the third prong, Allco argues that DPS will not adequately represent its interests: DPS does not represent the interests of developers of power facilities at all, and its role as default representative of ratepayers should not block participation by ratepayers who wish to appear independently. Additionally, Allco argues that the denial of its right to intervene is contrary to the public interest because it prevents the development of a complete record in the proceeding.

¶ 12. The above relates to Allco's request that it be allowed to intervene as of right under Rule 2.209(A). Although the hearing officer and the PUC both acknowledged Allco's additional request that it should be allowed to intervene at the Board's discretion under Rule 2.209(B), neither gave the request separate and explicit consideration, apparently taking the absence of any substantial interest by Allco to be dispositive. With respect to the final factor to be considered under Rule 2.209(B), the PUC did also find, without any further discussion, that intervention by Allco would cause undue delay and prejudice the existing parties. On appeal, Allco's briefing on the issue of permissive intervention was minimal, and GMP suggests that the issue was in fact waived. While we agree the briefing on this issue was minimal, we will nonetheless consider the issue on the assumption that it was not waived by Allco.

5

## II. Standard of Review

¶ 13. A decision to deny intervention as a matter of right is reviewed de novo. In re GMPSolar-Richmond LLC, 2017 VT 108, ¶ 19, __ Vt. __, 179 A.3d 1232. We do defer to an agency's interpretation of its own procedural regulations, albeit not with "the highly deferential standard we apply to the Commission's merits decisions." In re Stowe Cady Hill Solar, LLC, 2018 VT 3, ¶¶ 17, 19, __ Vt. __, 182 A.3d 53. We will accordingly reverse "when a regulation is interpreted or applied in a way that exceeds the statutory mandate under which the regulation was promulgated" or "when a regulation is inconsistently applied" by the agency itself. Id. at ¶ 21. Permissive intervention under Rule 2.209(B) is discretionary, so "we reverse such a decision only if we find abuse of discretion." GMPSolar-Richmond, 2017 VT 108, ¶ 19.

## III. Analysis

¶ 14. Both parties focus primarily on whether Allco met the requirements for intervention under Rule 2.209(A). As a starting point, we note that our decision in the very similar case GMPSolar-Richmond, 2017 VT 108, is instructive but not determinative. In that case, GMP was seeking to build new electricity generation facilities in Vermont, which also requires a CPG under 30 V.S.A. § 248. There too Allco sought to intervene in the CPG proceedings, arguing that it had a substantial interest because the federal Public Utility Regulatory Policies Act (PURPA) obliged GMP to buy power from Allco's in-state generation facilities. Id. ¶ 3. The PUC held that Allco had met none of the three requirements for intervention under Rule 2.209(A). Id. ¶ 24. We agreed with the PUC's reasoning, but we chose to "rest our decision" on the second prong of the rule's test, concluding that Allco had other legal avenues to protect its interests and the PUC hearing was therefore not the "exclusive means" to that end, as required by the rule. Id.

¶ 15. In this case, Allco has put forward a different theory of why it has a "substantial interest" under Rule 2.209—a theory that does not involve PURPA. As Allco recognizes in its brief and as it stated at oral argument, this theory is the crux of its case. We hold that even outside

6

of the PURPA context, Allco does not have the substantial interest required to intervene in the CPG proceeding, either as a ratepayer or as a competitor of GMP.

## A. Allco's Interest as a Ratepayer

¶ 16. Allco argues that, as a ratepayer, it has a substantial interest in ensuring that any purchases of out-of-state generation facilities by GMP comply with several of the criteria from 30 V.S.A. § 248(b) that were examined in the CPG proceeding. Specifically, Allco claims that it has a substantial interest in whether the purchase is required to meet the need for present and future demand for power service in a cost-effective way, whether it will result in an economic benefit for Vermont, and whether it is consistent with the GMP's own least-cost integrated plan and the DPS electric energy plan. Allco emphasizes that GMP's purchases might subject Allco, as a ratepayer, to higher rates in the future. The PUC's response to these arguments below was that Allco's interests as a ratepayer did not constitute a substantial, particularized interest, because Allco's position was not distinct from that of any other generic, individual ratepayer. We agree with the PUC.

¶ 17. "The primary rule when reviewing construction of administrative rules and regulations is to give language its plain, ordinary meaning." In re Hydro Energies Corp., 147 Vt. 570, 573, 522 A.2d 240, 242 (1987). It is true that the plain language of Rule 2.209(A) does not explicitly require that the interest of a potential intervenor be "particularized." But we must also give "great weight" to how the PUC applies its own rules. Id. at 574, 522 A.2d at 242. And it has been the PUC's consistent position that "[p]ursuant to Board Rule 2.209 in Vermont, . . . a would-be intervenor before the Board must demonstrate a substantial and particularized interest in a Section 248 proceeding to gain party status." Petition of GMPSolar-Williamstown, LLC, No. 8682, 2016 WL 3549296, at *6 (Vt. Pub. Serv. Bd. June 20, 2016); see also Application of Seneca Mountain Wind, LLC, No. 7867, 2012 WL 4846242, at *2 (Vt. Pub. Serv. Bd. Oct. 5, 2012) ("Simply raising generalized concerns is not sufficient to support intervention."); Tariff Filing of

7

<u>Green Mountain Power Corp.</u>, No. 5532, 1991 WL 736201 (Vt. Pub. Serv. Bd. Nov. 21, 1991) (denying right to intervene because petitioner "had not demonstrated that his interest as a ratepayer differed in any way from the general interests of other retail ratepayers represented by the Department").

¶ 18. On the basis of this consistent application, we defer to the PUC's interpretation of its own rule to require that a "substantial" interest be a sufficiently "particularized" one and to its determination that Allco did not meet this standard. The concerns that Allco raised about GMP's compliance with the relevant criteria in 30 V.S.A. § 248(b) are purely generalized ones that are theoretically shared by every ratepayer in Vermont.

¶ 19. Allco relies heavily on our decision in <u>In re Vermont Public Power Supply Authority</u>, especially on our reference there to "the Legislature's determination that those who wish to do so are to be allowed to have a voice in power supply issues." 140 Vt. 424, 432, 440 A.2d 140, 143 (1981). In that case, a group of ratepayers—including a town, a school district, a business, and four individual residents—were allowed to intervene before the PUC to contest approval of a loan undertaken by the former Vermont Public Power Supply Authority. The legal situation at the time, however, was different. Not only did the proceedings not take place under 30 V.S.A. § 248, they were also held before the adoption of Rule 2.209(A) by the PUC; the case thus was decided under the weaker standard of Rule 24(a) of the Vermont Rules of Civil Procedure, which requires merely that " 'the applicant <u>claim[] an interest</u> relating to the property or transaction which is the subject of the action.' " <u>Id</u>. at 430, 440 A.2d at 142 (emphasis added) (quoting V.R.C.P. 24(a)).[2]

---

[2] GMP suggests that the legal background to <u>Vermont Public Power Supply Authority</u> is also distinguished by the fact that the case was decided before the Legislature's decision to mandate that DPS represent all ratepayers before the PUC, a decision that GMP claims occurred in 1981. In fact, the relevant language in 30 V.S.A. § 2(a)-(b) was added by the Legislature during its 1979 adjourned session (which took place in 1980, before the case was brought). 1979, No. 204 (Adj. Sess.), § 2. Additionally, the State of Vermont represented the interests of the public in

¶ 20. Although <u>Vermont Public Power Supply Authority</u> thus does not govern this case, we do not reject its underlying principle. There is not necessarily a <u>per se</u> rule barring a ratepayer or group of ratepayers from articulating a substantial, particularized interest that would set them apart from generic ratepayers to a degree sufficient to allow them to intervene in a CPG proceeding under PUC Rule 2.209(A). We express no view here on what would be required to establish such an interest. We merely agree with the PUC that Allco failed to do so in this case.

## B. Allco's Interest as a Competitor

¶ 21. Allco also argues that, as a supplier of electric power and competitor of GMP, it has a substantial interest that could be adversely affected by the PUC's allowing GMP to purchase out-of-state generation facilities. Allco alleges that the purchases will, as a matter of market economics, potentially reduce the demand for electricity generated in Allco's own facilities in Vermont and thus cause Allco economic harm. The PUC's response below was that Allco's economic interests were not substantial for the purposes of Rule 2.209(A) because they were not within the scope of a proceeding under 30 V.S.A. § 248. We again agree with the PUC.

¶ 22. The PUC has consistently held that a proceeding under 30 V.S.A. § 248 "does not entail a review of the competitive financial impacts of a proposed project upon any one person or business" and that the allegation of impacts of this sort is therefore insufficient to demonstrate a substantial interest that would justify intervention under Rule 2.209. <u>GMPSolar-Williamstown, LLC</u>, No. 8682, 2016 WL 3549296, at *7 (rejecting motion by Allco to intervene as competitor of GMP). It is true that 30 V.S.A. § 248(b)(4) does mandate that in a CPG proceeding the PUC consider whether the proposal will "result in an economic benefit to the State and its residents." But this economic factor relates to the general public, not to individual competitors like Allco. See

the proceedings, pursuant to 30 V.S.A. § 217. See <u>Vt. Pub. Power Supply Auth.</u>, 140 Vt. at 433, 440 A.2d at 143. The latter language was also added in the 1979 adjourned session. 1979, No. 204 (Adj. Sess.), § 27.

In re Chittenden Recycling Servs., 162 Vt. 84, 88–89, 643 A.2d 1204, 1207 (1994) (holding that private waste management firm could not intervene, as competitor, in Act 78 permitting process for construction of public recycling facility). We therefore defer to the PUC's interpretation of Rule 2.209(A), as applied to a § 248(b) proceeding, to require that a substantial interest be one within the scope of the CPG proceeding and to its determination that Allco's alleged interest was not.

¶ 23. Allco cites various federal cases for the proposition that a competitive economic interest is sufficient for Article III standing under the federal constitution. U.S. Const. art. III, § 2. This is not the relevant standard. In deciding whether to grant a CPG, the PUC is not deciding a case or controversy but rather "is engaged in a legislative, policy-making process" that requires it to use its "informed judgment." In re Vt. Elec. Power Co., 2006 VT 69, ¶ 6, 179 Vt. 370, 895 A.2d 226 (quotations omitted). The PUC's procedures on intervention are governed by its own rules, which it must make and apply in pursuit of its mandate under 30 V.S.A. § 248 to ensure that the purchase and construction of new gas and electric facilities serve the general good of the State. It accordingly has flexibility to decide whose presence as a party would productively inform its policy-making. For instance, in Amended Petition of Vermont Gas Systems, Inc., the PUC rejected a petition by the Vermont Fuel Dealers' Association to intervene on the basis of the economic impact that the decision might have on its customer base, stating that "individual competitive impacts upon any one person or business are not within the scope of the Section 248 criteria and otherwise form no part of the issues that inform our general determination about the greater good." No. 7970, 2013 WL 1700944, at *9 (Vt. Pub. Serv. Bd. Apr. 12, 2013). Nonetheless, the PUC decided to grant permissive intervention to the Association because it was persuaded that the Association might "be in a position to contribute insights over the course of the proceeding that [would] assist [the PUC] in developing a full record" on relevant environmental questions. Id. Allco here did not persuade the PUC that it was in a position to contribute helpful

insights; rather, it avowedly sought to protect its own interests—interests of the sort that the PUC has consistently held to be outside of the scope of a proceeding under 30 V.S.A. § 248.

## C. Allco's Other Arguments

¶ 24.    Because we find that Allco has no substantial interest, either as a ratepayer or as a competitor, there is no need for us to reach the second and third prongs of the test under PUC Rule 2.209(A), which concern whether the proceeding was the exclusive means for Allco to protect its interest and whether its interest would be adequately represented by other parties.  Because Allco does not have any substantial interest under the PUC's understanding of the term, it was also not eligible to be granted permissive intervention under Rule 2.209(B), which requires that the applicant "demonstrate[] a substantial interest which may be affected by the outcome of the proceeding."  If the PUC and its hearing officer failed to give explicit consideration to Allco's request for permissive intervention, this was harmless error.

¶ 25.    Allco sparsely briefed a constitutional argument that the exclusive-means prong of Rule 2.209(A) violates due process and Chapter I, Article IV of the Vermont Constitution. As explained above, we resolve this matter on the first prong of the test (substantial interest), and there is no need for us to reach Allco's constitutional challenge to the third prong of the test.

## IV.  Conclusion

¶ 26.    The PUC's ruling that Allco had no substantial interest sufficient to allow it to intervene in a proceeding under 30 V.S.A. § 248 was in accord with the PUC's consistent interpretation of its own rules—a topic on which we give deference to an agency.  Because Allco had no substantial interest, the PUC properly denied its motion to intervene as a party.  In GMPSolar-Richmond, 2017 VT 108, ¶ 14, we decided that the appropriate way to dispose of an unsuccessful intervention appeal is not to dismiss the appeal for lack of jurisdiction, but to affirm

11

the decision below.  We do so here.  Because Allco was properly denied party status, it cannot appeal the grant of the CPG.  Id. ¶ 15.

We affirm the denial of Allco's petition to intervene.  We dismiss Allco's appeal of the grant of the certificate of public good.

FOR THE COURT:

_____

Associate Justice