NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 130

No. 2015-083

| | |
|---|---|
| In re Application of Beach Properties, Inc. d/b/a Basin Harbor Club, for a Certificate of Public Good for an Interconnected Group Net-Metered Photovoltaic Electric Power System | Supreme Court |
| | On Appeal from Public Service Board |
| | June Term, 2015 |

James Volz, Chair

Mary McGuire, Pro Se, Bronxville, New York, Appellant.

Douglas Grover, Pro Se, Chappaqua, New York, Appellant.

Amanda T. Rundle of Rundle & Rundle, PLLC, Springfield, for Appellants.

Ritchie E. Berger and Nathaniel J. Wonderly of Dinse, Knapp & McAndrew, P.C., Burlington, for Appellee.

PRESENT: Reiber, C.J.,[1] Dooley, Skoglund and Robinson, JJ., and Morse, J. (Ret.), Specially Assigned

¶ 1. **MORSE, J. (Ret.), Specially Assigned.** Mary McGuire and Douglas Grover separately appeal from orders of the Public Service Board granting Basin Harbor Club (BHC) a certificate of public good for the installation of a photovoltaic net metering system, and denying McGuire's motion for reconsideration. We conclude that the Board erred in denying McGuire's

_____

[1] Chief Justice Reiber was present for oral argument, but did not participate in this decision.

motion for reconsideration on the ground that she lacked party status, and therefore reverse and remand.

¶ 2.     In August 2014, BHC gave notice of its application for a certificate of public good (CPG) for the installation of a photovoltaic net metering system on its property in Ferrisburgh, pursuant to the provisions of 30 V.S.A. § 248(j)(2).  The project consisted of twenty-five pole-mounted sun-tracking solar panels occupying an area of approximately one-and-a-half acres, to be located in a portion of a twenty-acre field.  Each solar tracker would be twenty-feet tall at its maximum height.  The area of the field containing the project is bordered by the private Mile Point Road.

¶ 3.     The CPG application notified adjoining landowners that, "if you wish to comment to the Public Service Board about this proposal or request a hearing, you must file your comments with the Board and the applicant within 30 days of the date that the application was sent to the Board and all required parties."  In response, a number of property owners on Mile Point Road, including Mary McGuire and Douglas Grover, submitted comments, and several—including McGuire and Grover—also requested a hearing.  Some of the submissions were relatively brief letters of opposition to the project, principally on aesthetic and environmental grounds.  Those of McGuire and Grover were extensive, discussing each of the statutory review criteria under 30 V.S.A. § 248(b), and asserting that the project—located in the Shoreland District of the Ferrisburgh town plan—was inconsistent with the plan and the orderly development of the region.  They also argued that the project would hurt the local economy by decreasing property values of lakefront homes; posed health and safety risks by emitting high electronic and magnetic field (EMF) levels and ocular glare that could temporarily blind pilots at a nearby private airport; and would have an unduly adverse aesthetic impact on the area's "vacation oriented lakeside homes and advertised scenic tourist routes."  A number of additional exhibits were appended to the comments.

¶ 4.     The Board directed BHC to respond to "the numerous comments" opposing the application and specifically to "organize its response" into sections clearly identifying the issue and comment it was addressing. BHC complied, submitting a detailed response which specifically addressed the arguments raised by McGuire, Grover, and the other neighbors. Supplemental comments and exhibits filed by McGuire and others resulted in a Board order directing BHC to address these additional concerns, as well.

¶ 5.     Ultimately, in late November 2014, about three months after the initial application, the Board issued a written decision granting the CPG. The Board noted that the Mile Point Road neighbors had raised numerous objections to the project under the relevant statutory criteria, and addressed each in turn. It found that the project was not inconsistent with the town plan; that neighbors had not demonstrated any "significant economic harm" or historic resources that could be impacted by the project; and that the evidence did not show any significant public-health issue relating to EMF levels or ocular glare. As to aesthetics, the Board applied the so-called Quechee test to find that the project would have an adverse effect as a result of being "out of context" with its surroundings, but that the impact was not "undue." In this regard, the Board found that the project did not violate any clear community standards; that BHC had taken generally available mitigating steps to minimize its visibility and adverse impact; and that it would not be shocking to the average person.

¶ 6.     The decision stated that any appeal must be filed within thirty days from the date of decision, and that any motion for reconsideration must be filed within ten days of the date of the decision. McGuire filed a timely, and lengthy, motion for reconsideration, challenging the Board's findings under each of the statutory review criteria. Grover filed an untimely motion for reconsideration by email, and failed to file an original copy with the Board, as required by Board rule. See Public Service Board Rules, Rule 2.204(C), 18 Code of Vt. Rules 18-1-1:2.204, http://www.lexisnexis.com/hottopics/codeofvtrules (hereafter Pub. Serv. Bd. Rules) (filing "shall

3

be accomplished by delivery to the clerk as the office of the Board or by delivery to the Board").[2]

¶ 7. BHC dismissed McGuire's motion for reconsideration in a written decision in mid-January 2015, finding that she had not moved to intervene for party status and therefore "lack[ed] the requisite legal standing to file a motion for reconsideration." The Board did not address Grover's motion. McGuire then filed a request for "intervenor status" and, shortly thereafter, a notice of appeal. Grover filed a separate notice of appeal and motion to intervene.[3]

¶ 8. Although both appeals focus on the merits of the Board's CPG ruling, we are confronted at the outset with several significant procedural issues. First, as noted, the record shows that Grover's motion for reconsideration was untimely, and therefore did not effectively toll the thirty-day appeal period under Vermont Rule of Appellate Procedure 4(b)(5). See Fagnant v. Foss, 2013 VT 16A, ¶ 10, 194 Vt. 405, 82 A.3d 570 ("The motions listed in Rule (4)(b) toll the running of the appeal period only if they are timely filed."). Thus, the appeal by Grover was untimely, and we lack jurisdiction to consider it. Casella Constr., Inc. v. Dep't of Taxes, 2005 VT 18, ¶ 3, 178 Vt. 61, 869 A.2d 157 ("The timely filing of a notice of appeal is a jurisdictional requirement.").

¶ 9. Second, we are confronted with BHC's argument that McGuire failed to obtain party status before the Board, and therefore lacked standing to bring her appeal. We also consider BHC's related argument, raised in a motion to dismiss while the appeal was pending,

---

[2] As the Board issued its decision on November 25, 2014, any motion for reconsideration had to be filed by December 10, 2014. See V.R.C.P. 6(a) (excluding intermediate Saturdays, Sundays and holidays when time for filing is less than eleven days); Pub. Serv. Bd. Rule 2.103 (incorporating Vermont Rules of Civil Procedure); id. Rule 2.207 (specifically incorporating provisions of V.R.C.P. 6(a)). Grover's motion was e-mailed to the Board on December 11, 2014.

[3] It does not appear from the record that the Board ever ruled on the motions to intervene.

that McGuire's lack of party status disqualified her from filing a motion for reconsideration, that the motion could not effectively toll the thirty-day appeal period, and that her appeal was therefore untimely.[4]  Although McGuire disputes BHC's claim that party status was required to appeal or move for reconsideration, she also asserts that she became a party in effect in the course of the proceeding, and therefore properly appealed and moved for reconsideration.  As explained below, we agree with the latter assertion.[5]

¶ 10.  We begin with the pertinent provisions governing the application and review process for "net metering" systems of this type.[6]  The Legislature has authorized the Board to "establish by rule or order standards and procedures governing application for, and issuance or revocation of a certificate of public good for net metering systems under the provisions of section 248 of this title."  30 V.S.A. §219a(c).  Section 248 provides that an applicant must provide written notice of the proposed certificate to certain specified "parties," including several identified state agencies, the regional planning commission, and the local municipal legislative body of each town and city where the proposed facility will be located, as well as "any other

_____

[4]  We deferred decision on the motion in an entry order indicating that it would be considered with the appeal on the merits.

[5]  We need not, accordingly, directly address BHC's argument for lack of standing based on 30 V.S.A. § 12, which provides that "[a] party to a cause who feels aggrieved by the final order, judgment, or decree of the Board may appeal to the Supreme Court," as well as 30 V.S.A. § 234, which provides that "[a] person, partnership or unincorporated association aggrieved by any act or order of the public service board may transfer such cause to the supreme court under the provisions of section 12 of this title."  (Emphasis added.)  Nor is it necessary to consider BHC's related argument that the appeal was untimely, citing our statement in Osborn v. Osborn that a motion to alter or amend a judgment "provides a party with an opportunity to take advantage of the court's power to correct a judgment," 147 Vt. 432, 433, 519 A.2d 1161, 1163 (1986) (emphasis added), as well as the rule that, "[i]f a party timely files in the superior court any of the motions referenced below, the full time for appeal begins to run . . . from the entry of an order disposing of the last remaining motion." V.R.A.P. 4(b) (emphases added).

[6]  "Net metering system" is defined by statute as a "facility for generation of electricity" that is no more than 500kW in capacity; operates in parallel with existing facilities; is intended primarily to offset the customer's own electricity requirements; and "employs a renewable energy source." 30 V.S.A. § 219a(a)(6).

<u>person</u> found by the Board to have a substantial interest in the matter." 30 V.S.A. §§ 248(j)(2) & (a)(4)(C) (emphasis added). The statute thus appears to contemplate two distinct types of participants in Board proceedings: "persons" and "parties." The statute further specifies that such notice "shall request comment" on whether the petition "raises a significant issue" under the relevant review criteria, and, if so, the Board "shall hear evidence on any such issue." <u>Id</u>. § 248(j)(2).

¶ 11. The Board's general rules of practice maintain the distinction, providing that, at the commencement of any proceeding, "the party initiating the same shall file a statement identifying each person, party or other entity to whom or to which the Board or the Clerk is required to give notice of such proceeding." Pub. Serv. Bd. Rule 2.205(A). The rules further establish general standards for "intervention" to obtain party status. "Intervention as of right" is authorized where a "person" is specifically authorized by statute to intervene, or where the person demonstrates a "substantial interest" which may be adversely affected, the proceeding provides the "exclusive means" of protecting that interest, and the interest "is not adequately represented by existing parties." <u>Id</u>. Rule 2.209(A). "Permissive intervention" is authorized in similar circumstance where the person also shows that intervention "will not unduly delay the proceeding or prejudice the interests of existing parties or the public." <u>Id</u>. Rule 2.209(B).

¶ 12. The Board has also adopted special rules "Pertaining to Construction and Operation of Net Metering Systems." They provide that an application for a certificate of public good must be filed "in accordance with the procedures and Net Metering Application Form prescribed by the Board and shall contain all of the information required by the instructions on that form." <u>Id</u>. Rule 5.110(B)(1). Copies of the application must be provided "to the persons and organizations as indicated in the application form's instructions." <u>Id</u>. Rule 5.110(B)(2) Thereafter, the rules provide that "any person who wishes to submit comments to the Board concerning an application . . . , file a motion to intervene, or request a technical evidentiary

6

hearing" shall file such a request within the time prescribed in the applicaton form. Id. Rule 5.110(B)(3). As discussed more fully below, the application form states that those receiving a copy of the application shall "have the opportunity to comment on the project and request a hearing" within a specified timeframe, but makes no specific reference to the opportunity to intervene. The application also specifies the "Notice Requirements" for net-metering systems, which require that copies be sent to certain state agencies, the local planning commission and legislative body, "and all adjoining landowners."

¶ 13. As noted, McGuire received a copy of the application and submitted extensive comments, but did not move to formally intervene, and the Board rejected her motion for reconsideration on this basis. McGuire maintains, however, that she should be afforded party status because she was not specifically informed of the need to intervene, because she was effectively treated as a party, and because she was reasonably led to believe that she was a party.

¶ 14. The general rule, of course, is that non-parties to a suit do not have standing to appeal. See Marino v. Ortiz, 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled."). There are, however, a number of generally recognized exceptions to this rule. One such exception has been described in a leading treatise as follows: "Appeals by those who participated as if parties are frequently entertained despite a failure to achieve formal status as a party. Most of these appeals involve persons who participate in trial court proceedings as if they had intervened, and who seem to have been treated on all sides as de facto parties." 15A C.Wright, et. al., Federal Practice & Procedure: Jurisdiction and Related Matters § 3902.1, at 106 (2d ed. 1992).

¶ 15. Courts in a number of state and federal jurisdictions have both recognized this "de facto" party exception and identified the limited circumstances for its application. One of the clearest statements was by the federal court of appeals in SEC v. Forex Asset Management, LLC, which set forth a three-part test to determine whether a non-party may appeal, inquiring whether:

7

(1) "the non-party actuall[y]" participated in the proceedings below; (2) "the equities weigh in favor of hearing the appeal"; and (3) the non-party has "a personal stake in the outcome." 242 F.3d 325, 329 (5th Cir. 2001) (quotations omitted). Applying this test, the court there held that certain creditors could appeal a district court decision approving a receiver's distribution of assets in a suit brought by the Securities and Exchange Commission, despite the fact that they were not named as parties and had not moved to intervene under Federal Rule of Civil Procedure 24 (largely identical to V.R.C.P. 24). The court noted that the creditors had participated in the proceeding by filing an objection to the receiver's plan, that the district court had actually "solicited objections" and effectively treated them as parties, and that the order substantially affected their interests. 242 F.3d at 329. Thus, while emphasizing the narrow scope of the exception, the court held that the creditors there had met the test for non-party standing. Id. at 330.

¶ 16. Other courts have applied the same or similar tests to recognize de-facto party status in discrete circumstances. In In re Oshansky, for example, the court held that the niece of an elderly woman who was the subject of an action by a hospital to appoint a guardian and conservator had standing to appeal the appointment where, although she had not sought to intervene as a party, "she was a party by any other measure." 804 A.2d 1077, 1090 (D.C. 2002) She had participated in the proceeding, the court had addressed her arguments and "treated [her] as a de facto party," she had a "personal stake" in the outcome, and no party would be "unfairly prejudiced" by recognizing her appeal. Id.; see also Carhart v. Carhart-Halaska Int'l, LLC, 788 F.3d 687, 690 (7th Cir. 2015) (holding that, "while [appellant] was not a named party and did not move to intervene in the district court until after he had filed a notice of appeal (which the district court held was too late) he participated fully in the proceeding, just as if he had intervened and become a party," he had a legitimate interest in the case, and was properly considered a party without "the formality of a motion to intervene"); In re Siler, 571 F.3d 604,

8

608 (6th Cir. 2009) (holding that appellants, the Silers, had standing to pursue their appeal where, "although [they] did not formally intervene and become parties, the district court effectively treated the Silers like intervening parties and decided the merits of their motions"); Curtis v. City of Des Moines, 995 F.2d 125, 128 (8th Cir. 1993) (holding that parents of crime victim could appeal from order distributing damages from perpetrator's civil rights action against police where, "[a]lthough they were not a party, nor sought to intervene, they actively participated . . . , contest[ed] the issues they raise here on appeal . . . , and they have an interest"); Corbett v. Related Cos. Ne., Inc., 677 N.E.2d 1153, 1155-56 (Mass. 1997) (recognizing that "[t]here are limited circumstances in which a nonparty has been permitted to appeal from a judgment, despite its failure to intervene, . . . where a nonparty has a . . . substantial interest that has been prejudiced by the judgment, and has participated in the underlying proceedings to such an extent that the nonparty has intervened 'in fact' "); Federated Mut. Ins. Co. v. McNeal, 943 So. 2d 658, 662-63 (Miss. 2006) (allowing workers' compensation insurer to appeal from trial court order denying subrogation from insured's judgment against third party where, despite its failure to intervene, insurer participated in proceedings, was effectively treated as having intervened, and had personal stake in outcome).

¶ 17.   Turning to the facts here, it is undisputed that McGuire did not move to intervene during the course of the proceeding and the Board did not consider or grant such a request.[7]  She maintains with some validity, however, that she was not notified of the need to apply for party status, reasonably believed that she was a party, and was effectively treated as such.  As noted, the CPG application informed McGuire, as an adjoining landowner, of her "opportunity to comment on the project and to request a hearing," and instructed that "you must file the comments and any request for a hearing with the Board and the applicant within ten working

---

[7]  McGuire's motion to intervene was filed after the Board's orders granting the CPG and denying the motion for reconsideration, and shortly before she filed her notice of appeal.

days of the date that the application was sent to the Public Service Board and all required parties." The notice said nothing about the need to intervene to become a "party," and in, fact, appeared to imply that she already was by stating that comments were due within ten days of the notice to "all required parties." The application was accompanied by a list of all "Notified Parties," which included McGuire's name and address.[8]

¶ 18. McGuire, in response, submitted extensive comments and requested a hearing, the Board directed BHC to respond to the comments, and BHC duly complied, submitting a detailed, point-by-point response together with additional exhibits. McGuire filed an equally extensive rebuttal to BHC's response as well as supplemental photographs of the area. Thereafter, responding specifically to McGuire's expressed concern about "the danger of glare from solar panels temporarily blinding pilots" at a nearby private airport, the Board directed BHC to "provide a solar glare hazard analysis for the nearby airfield." BHC performed the analysis as directed and submitted its report to the Board.

¶ 19. The record thus shows that McGuire actively participated in the proceeding before the Board, and that the Board not only considered her claims but required that BHC directly engage with them. Indeed, the Board's ultimate decision granting the CPG was concerned for the most part with little else, systematically addressing each of the myriad concerns raised by McGuire and other residents of Mile Point Road.

---

[8] We note that, as of July 1, 2015, the Board has modified its form application for net-metering systems by substituting the phrase "all required recipients" for "all required parties." We also note that, in contrast to the notice provided here for BHC's solar-energy project under 30 V.S.A. §§ 219a and 248, the notice provided under 30 V.S.A. § 248a for the telecommunication facility at issue in In re New Cingular Wireless PCS, LLC expressly informed recipients that they may "file a motion to intervene with the [Board]" by a date specific. 2012 VT 46, ¶ 2, 192 Vt. 20, 54 A.3d 141. Although the notice in Cingular did not also reference the deadline for filing comments, the deficiency was addressed in the prefiling notice, which expressly informed interested parties that they may "submit comments and seek intervention within 21 calendar days of the date the petition was filed." Id. ¶ 8.

10

¶ 20. Like the original notice, the Board's decision itself remained silent on the question of intervention and party status, simply identifying the timeframes for filing a motion for reconsideration or appeal. Consistent with its practice throughout the proceeding, however, the Board specifically authorized the filing of a response to McGuire's motion for reconsideration while giving no indication that she lacked legal standing to file such a motion as a non-party.

¶ 21. Viewed in the light of these facts, McGuire's claim to de facto-party status is persuasive. The notice she received of the proposed solar-energy project invited her to submit comments, characterized her as one of a number of "required parties" who had received such notice, and yet never informed her of the need to affirmatively request formal party status by moving to intervene. The Board thereafter accepted her filings, directed BHC to respond, ordered an additional glare-analysis in response to her expressed concerns, and ultimately issued a decision focused principally on the arguments raised by McGuire and her neighbors. That she would have viewed herself as a party to the proceeding in these circumstances—particularly as a pro se litigant—is therefore eminently reasonable. Furthermore, BHC has not identified any basis for concluding that it was prejudiced by the absence of a formal intervention motion.

¶ 22. We thus conclude that the equities for treating McGuire as a de facto party weigh strongly in her favor; that she actively participated in the proceeding; and that, regardless of the Board's ultimate decision concerning the project's aesthetic impact, she had a strong, personal stake in the outcome. See In re New Cingular Wireless, 2012 VT 46, ¶ 4 (noting Board's ruling that adjoining landowners "had articulated a sufficient interest in ensuring that [aesthetic and other] impacts did not come to pass to warrant permissive intervention" despite their failure "to provide any evidence, other than a site plan depicting the location of their properties, to support

11

the contention that the project may result in the impacts they described"). Accordingly, we find that the requisites for according de facto-party status were met.[9]

¶ 23.    We stress that our conclusion in this regard is limited to the specific set of facts in the record before us.  We do not hold that any and all participants in such proceedings may attain party status without the need to formally move to intervene.  Significant factors specific to this case include: (1) McGuire is an adjoining landowner who was entitled to, and did, receive notice of BHC's application; (2) McGuire was not represented by counsel; (3) the notice referred to those who had received it as "required parties," and McGuire was on the list of "notified parties;" (4) the notice laid out specific steps and timelines for McGuire to comment on the application, but did not reference her right to intervene and did not explain the distinction between "commenting" and actually "intervening" as a party, and did not describe the process and timelines for intervention; (5) the Board responded to McGuire's motions as if she were a party; and (6) McGuire raised substantial issues that were central to the Board's analysis.  Had any of these circumstances not been present, the de-facto party analysis might have been different.  The essence of equity is that it applies only in those exceptional cases "wherein the law (by reason of its universality) is deficient." Bucklin v. Beals, 38 Vt. 653, 662 (1866).

¶ 24.    Having determined that McGuire was a de facto party in the proceeding before the Board, it follows that the Board erred in dismissing her motion for reconsideration on the sole basis that she lacked party status.  Accordingly, we conclude that Board's order dismissing the motion for reconsideration must be reversed, and the matter remanded to the Board to

_____

    [9]  In light of our holding, we need not consider whether McGuire's belated motion to intervene, filed in conjunction with her appeal, was timely, or if so whether a remand is necessary for the Board to address the motion.

12

consider the motion on its merits. Our disposition renders it unnecessary to address McGuire's claims that the Board erred in issuing the CPG.[10]

Reversed and remanded for further proceedings consistent with the views expressed herein.

FOR THE COURT:

_____
Associate Justice (Ret.), Specially Assigned

---

[10] Until the Board rules on the motion for reconsideration, any consideration of the Board's CPG decision would be premature. Both parties remain free, of course, to file a timely appeal from the Board's decision on remand on the motion for reconsideration.

We also note that, following the Board's issuance of the CPG, an adjoining landowner who had previously submitted comments filed a letter with the Board citing additional evidence that a number of properties on Mile Point Road are listed on the Vermont State Register of Historic Places, in support of her claim that the project would adversely affect the historic resources in the area. The Board, in response, issued a "Memorandum," dated February 5, 2015, directing BHC to file a response "to these allegations," to "identify all historic sites or districts near the Project and state what impact the Project will have on these resources," and to "describe with particularity what investigation [BHC] undertook regarding historic sites prior to filing the [CPG] [a]pplication." In addition, the Board requested the Vermont Department of Public Service and the Vermont Division for Historic Preservation to file comments with the Board addressing the issue and BHC's response. BHC subsequently commissioned and filed a report by a private consultant. The Vermont Division for Historic Preservation then filed a letter with the Board stating that an analysis of the project's effects on the historic sites identified by BHC's consultant required a "qualified architectural historian"; that, in addition, the project was located "within an area of high archaeological sensitivity for Native American archaeological sites"; and that, accordingly, it recommended that BHC engage "qualified architectural and archaeological consultants" to prepare and submit additional reports concerning the project's effects on these resources. The Department also submitted a response, stating that "it appear[ed]" that BHC's application had contained "inaccurate information" on the nature of the historic resources in the area, and recommended that the Board require a complete response. BHC has apparently filed the additional historic-sites assessment, but the archaeological-sites assessment remains pending, and the Board has taken no further action in the matter.

13