NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 108

Nos. 2016-034 and 2016-148

| | |
|---|---|
| In re Petition of GMPSolar-Richmond, LLC (Allco Renewable Energy Limited, Appellant) | Supreme Court |
| | On Appeal from Public Service Board |
| | October Term, 2016 |

Lynn Fabrizio, Hearing Officer (motion to intervene); James Volz, Chair (final order)

Thomas Melone, New York, New York, for Appellant.

Geoffrey H. Hand and Victoria M. Westgate of Dunkiel Saunders Elliott Raubvogel & Hand, PLLC, Burlington, for Appellee GMPSolar-Richmond, LLC.

Geoffrey Commons, Montpelier, for Appellee Public Service Department.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **DOOLEY, J.** Allco Renewable Energy Ltd. (Allco) appeals from the denial of its motion to intervene, and its renewed motion to intervene, in this certificate-of-public-good (CPG) proceeding for a solar electric generation facility. The applicant, GMPSolar–Richmond, LLC (GMPSR), is an affiliate of Green Mountain Power Corp. (GMP), an electricity utility. The applicant is owned by GMP and an investor. Allco is developing a number of solar electric generation facilities in Vermont. A hearing officer of the Public Service Board (PSB) denied Allco's request for intervention as of right and permissive intervention; the PSB on motion for reconsideration similarly denied the intervention request. Allco argues that the PSB used the

wrong framework in reviewing its request and incorrectly applied the intervention criteria. We affirm.

¶ 2. We begin with a brief overview of law that governs a CPG proceeding. Applicant's project requires a CPG prior to "site preparation for or construction" because it will be an "electric generation facility." 30 V.S.A. § 248(a)(2)(A). The CPG is essentially a license to build and operate the facility. Before it can issue a CPG, the Board must find that a list of statutory requirements are met. See id. § 248(b). Allco relies on two of these requirements as the bases for its intervention: (1) that the facility "[w]ill result in an economic benefit to the State and its residents," id. § 248(b)(4); and (2) because the facility is owned by a company conducting a public service business, id. § 201, its construction "is consistent with the principles for resource selection expressed in that company's approved least-cost integrated plan," id. § 248(b)(6). In conducting its analysis under § 248, the Board engages in a "legislative, policy-making process," and "weigh[s] alternatives presented to it, utilizing its particular expertise and informed judgment." In re UPC Vt. Wind, LLC, 2009 VT 19, ¶ 2, 185 Vt. 296, 969 A.2d 144 (quotations omitted). As explained in more detail below, Allco's position is that the CPG should be denied for noncompliance with these requirements because GMP is a retail electricity utility governed by the federal Public Utilities Regulatory Policies Act (PURPA).

¶ 3. A brief overview of Allco's PURPA position is also helpful to understand the proceedings below. Allco argues that PURPA requires GMP to buy power for resale produced by Allco's solar facilities—termed "qualifying facilities" or QFs—if the cost of such power is below GMP's "avoided cost," that is, the cost of producing an equivalent amount of the power that it is currently selling to customers. It alleges that it offered such power to GMP, but GMP illegally declined to purchase it. It further alleges that if GMP purchased Allco's power, GMP's power needs would be met, and it would have no need to build its own facility. GMPSR responds that because of Vermont's unique method of implementing PURPA, GMP had no obligation to

2

purchase power from Allco, and, in any event, Allco's PURPA compliance issue cannot be raised in a CPG proceeding. Again, these positions are explained in greater detail below.

¶ 4. With this framework in mind, we turn to the facts and proceedings in this case. In July 2015, GMPSR sought a CPG under 30 V.S.A. § 248 to install and operate a 2.0 megawatt (MW) solar electric generation facility in Richmond, Vermont. In late September 2015, Allco moved to intervene in opposition to the application under PSB Rule 2.209(A) and (B). That rule provides:

> (A) Intervention as of right. Upon timely application, a person shall be permitted to intervene in any proceeding (1) when a statute confers an unconditional right to intervene; (2) when a statute confers a conditional right to intervene and the condition or conditions are satisfied; or (3) when the applicant demonstrates a substantial interest which may be adversely affected by the outcome of the proceeding, where the proceeding affords the exclusive means by which the applicant can protect that interest and where the applicant's interest is not adequately represented by existing parties.

> (B) Permissive intervention. Upon timely application, a person may, in the discretion of the Board, be permitted to intervene in any proceeding when the applicant demonstrates a substantial interest which may be affected by the outcome of the proceeding. In exercising its discretion in this paragraph, the Board shall consider (1) whether the applicant's interest will be adequately protected by other parties; (2) whether alternative means exist by which the applicant's interest can be protected; and (3) whether intervention will unduly delay the proceeding or prejudice the interests of existing parties or of the public.

PSB Rule 2.209(A)(3), (B), http://puc.vermont.gov/sites/psbnew/files/doc_library/2200-procedures-generally-applicable.pdf [https://perma.cc/HBB2-SVJP].[1]

¶ 5. In support of its intervention request, Allco stated that it had offered to enter into a long-term power-purchase agreement (PPA) with GMP but GMP rejected its offer. It argued that: (1) had GMP accepted its offer, Allco's QFs would have displaced the Project here; (2) the Project,

_____

[1] Effective July 1, 2017, the PSB is now called the Public Utility Commission. We continue to use the former name in this opinion because it was in effect during all proceedings below.

3

if built, would adversely affect the calculation of GMP's avoided costs and cause Allco and other QFs to earn a lower profit from future energy sales under a future PURPA contract; and (3) the levelized cost of 12.9 cents per kilowatt hour (kWh), the estimated cost of power produced by GMPSR, was by definition GMP's avoided costs, which GMP should have agreed to pay Allco's QFs under PURPA. Allco argued that this CPG proceeding was the exclusive means by which the Board would consider the approval of this Project; its interest was not adequately represented by existing parties; and its participation would not unduly delay the proceedings or cause any prejudice. Allco further argued that its participation would be useful because it would raise federal tax issues implicated by "a partnership flip transaction when one of the parties is an electric utility that must normalize." GMPSR opposed the petition.

¶ 6. A hearing officer denied Allco's request in October 2015. She found that Allco failed to demonstrate a substantial interest that might be adversely affected by the outcome of this proceeding. This proceeding, she explained, involved the siting review of a solar project under 30 V.S.A. § 248, and § 248 did not contemplate review of avoided-cost calculations or the potential competitive effects of proposed energy generation projects within the state electricity market. Additionally, the hearing officer found that this CPG proceeding was not the exclusive means by which Allco could protect its stated interests. She cited the various avenues available to Allco under Public Service Board Rule 4.104(A)[2] with respect to pursuing PPAs through the designated

---

[2] The Board adopted a new rule, effective September 15, 2016, that changes the way in which PURPA is implemented in Vermont. See PSB Rule 4.100, http://puc.vermont.gov/about-us/statutes-and-rules/current-rules-and-general-orders [https://perma.cc/N4Z6-G4RF]. There is no longer a designated purchasing agent. The rule makes clear, however, that "[f]or contracts and obligations in existence prior to the effective date of this Rule, nothing herein shall cause them to be changed." PSB Rule 4.102(C). Additionally, "[a]ny previous designation of a Purchasing Agent pursuant to prior versions of Rule 4.100, as well as the rules and obligations attendant thereto, shall remain in full force and effect unless and until specifically modified by the Board on a prospective basis with respect to contracts and obligations formed prior to the effective date of this Rule." Id. Our decision relies on the rules in place at the time of the Board's decision, which predated the rule change. All citations are to the former versions of the rule.

purchasing agent for Vermont utilities, and under 30 V.S.A. § 208 to the extent Allco suggested that GMP had violated a rule or statute or otherwise infringed on Allco's rights under PURPA. The hearing officer also noted Allco's own suggestion that it might have alternative recourse under 42 U.S.C. § 1983, which further undermined Allco's argument that it lacked alternative means to protect its stated interests. The hearing officer determined that the Department of Public Service could adequately represent Allco's interest in the potential impact that GMP's project might have on the public good. She thus denied Allco's motion to intervene.

¶ 7. Allco moved for reconsideration, adding several new arguments in support of its intervention request. In addition to the reasons stated above, Allco asserted that no project could promote the general good unless Allco's interpretation of PURPA was followed; it also claimed a substantial interest in pursuing its corporate mission to combat climate change by seeking to enforce rights of QFs.

¶ 8. The PSB upheld the hearing officer's decision in a December 2015 order. The Board agreed that Allco failed to demonstrate a substantial interest that might be adversely affected by the outcome of this proceeding. It found that Allco's arguments revealed a flawed understanding of how PURPA was implemented in Vermont. The Board described the regulatory framework set forth below, and explained that in Vermont, if Allco wanted to sell its QF output under PURPA, it must offer its QF output to Vermont utilities through the designated purchasing agent. It concluded GMP had no contracting obligation under PURPA, although it could voluntarily enter a bilateral contract for power with a QF. As a result, the Board explained, a contract through the purchasing agent was the appropriate means for Allco to pursue its stated interest in selling the output of its QFs in the Vermont market under PURPA.

¶ 9. The Board found nothing to show that Allco had pursued a contract through Vermont's PURPA purchasing agent. Indeed, Allco's initial filing suggested that it sought to intervene primarily because it had approached GMP directly for a contract under PURPA and

5

GMP declined to pursue the proposed contract. Where Allco had not exercised its rights under PSB Rule 4.102(A), the Board explained, it could not now claim that the instant proceeding was the sole means by which to protect its interests as an owner and developer of QFs.

¶ 10. The Board further found that GMP's avoided cost was not at issue here because the rates available to QFs in Vermont were based on a statewide composite pricing system determined under Rule 4.100. The statewide composite rates were based on projections of the energy and capacity prices in the wholesale electricity market administered by ISO-New England, a market representing approximately 31,000 GW in capacity. The Board found that the construction of a 2.0 MW solar facility within the broader, regional market would have virtually no effect upon these rate projections.

¶ 11. The Board also rejected Allco's argument that the Department of Public Service could not adequately represent Allco's interests or those of other QFs in Vermont. It explained that the Department did not "represent" the designated purchasing agent under Rule 4.104, as Allco argued. Instead, the Department was tasked with proposing to the PSB the avoided capacity and energy costs of the Vermont composite electric utility system under PURPA. The Board established the rate schedules under Rule 4.100 after reviewing the Department's proposal. Thus, the Board found that the Department was well-positioned to adequately represent the policy interests that Allco sought to advance in this proceeding to the extent that Allco's arguments were relevant to scrutiny of the Project under 30 V.S.A. § 248. The Board further found that Allco's intervention would unduly delay the proceeding and prejudice the Department and GMP because the issues that Allco sought to litigate fell beyond the scope of § 248 review. Allco appealed to this Court from this order in January 2016.

¶ 12. The Board held a technical hearing on the merits of the Project in mid-January 2016. In mid-February 2016, Allco submitted a second motion to intervene. Allco asserted that it was entitled to intervene as of right because it had a substantial interest in not having the rates

6

charged to its QFs and other ratepayers increase if the Project's proposed partnership-flip financing structure did not achieve the favorable federal tax consequences it sought. Allco also claimed a substantial interest in the determination of whether the Project promoted the general good of the State with respect to several specific factors under § 248. It maintained that its request was timely because it was not until it read the transcript from the technical hearing "that the third prong of as-of-right intervention—inadequate representation—was satisfied." GMPSR opposed the motion. In a March 2016 order, the hearing officer denied Allco's second intervention request. She explained that Allco already had been denied intervention and it did not raise any new issues that had not been raised in its prior filings. Allco did not appeal the hearing officer's decision to the Board.[3] Allco appealed the hearing officer's decision to this Court, and Allco's two appeals were consolidated.

¶ 13. We address several initial matters relating to the scope of the appeal issues before turning to the merits. First, no party challenges Allco's right to appeal from the Board's denial of its first intervention request. We held in In re Vermont Public Power Supply Authority that "it is now thoroughly settled that a would-be intervenor may appeal a denial of intervention and the appellate court will reverse if it concludes that he was entitled to intervene of right." 140 Vt. 424, 433-34, 440 A.2d 140, 144 (1981) (citing 7A C. Wright & A. Miller, Fed. Prac. & Procedure § 1923, at 628 (1972) (collecting cases)). This case predated the Board's adoption of the intervention rule at issue here, and "in the absence of other standards," the Court relied on the intervention standard set forth in Vermont Rule of Civil Procedure 24. Id. at 430, 440 A.2d at 142.

¶ 14. The intervenor prevailed in the case cited above, and we have not explicitly addressed how to dispose of unsuccessful intervention appeals. Traditionally, after reviewing and rejecting an intervention appeal on the merits, courts have dismissed the appeal for lack of

---

    [3] Shortly after denying the second intervention motion, the hearing officer issued a decision granting the CPG, and the PSB issued the CPG.

jurisdiction. See 7C C. Wright & A. Miller, Fed. Prac. & Procedure § 1923 (3d ed.). This means that "appealability" turns on the merits of the appeal. The modern trend—and the more simple approach endorsed by Wright and Miller—appears to be simply affirming, rather than dismissing, unsuccessful intervention appeals. See id. (explaining that if appellate court concludes that intervention of right was properly denied, traditional practice has been to dismiss appeal for want of jurisdiction, but many courts now simply affirm denial of intervention of right; and identifying similar tradition, and change, in cases of permissive intervention). We have followed the modern trend in practice. See Helm v. Helm, 139 Vt. 225, 227, 424 A.2d 1081, 1082 (1981) (affirming trial court's denial of husband's motion to intervene as of right as he failed to satisfy rule's criteria, and his request for permissive intervention because he failed to demonstrate an abuse of discretion); Schott v. Baker, 132 Vt. 564, 326 A.2d 157 (1974) (affirming denial of motion to intervene). We continue to follow this rule here.

¶ 15.    Second, we do not address any challenges to the merits of the CPG decision. Allco has no right to challenge the final CPG order because it was not a party below. See 30 V.S.A. § 12 ("A party to a cause who feels aggrieved by the final order, judgment, or decree of the Board may appeal to the Supreme Court.") (emphasis added); see also In re Beach Props., Inc., 2015 VT 130, ¶ 14, 200 Vt. 630, 133 A.3d 854 ("The general rule, of course, is that nonparties to a suit do not have standing to appeal.") (citing Marino v. Ortiz, 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.")); 7C C. Wright & A. Miller, Fed. Prac. & Procedure, § 1923 (3d ed.) ("One who does not seek to intervene, or whose application to intervene is denied, ordinarily may not appeal from any subsequent order in the proceeding.").

¶ 16.    We reject Allco's argument that it has a right to appeal under 30 V.S.A. § 234. Section 234 simply states that "[a] person, partnership, or unincorporated association aggrieved by any act or order of the Public Service Board may transfer such cause to the Supreme Court under

the provisions of section 12 of this title." Section 12 provides that only parties may appeal. Id. § 12. Thus, under both § 234 and § 12, Allco has no right to appeal the merits of the CPG order. This implements the plain language of both statutes; it does not render 30 V.S.A. § 234 superfluous as Allco asserts. See Nelson v. Town of St. Johnsbury Selectboard, 2015 VT 5, ¶ 12, 198 Vt. 277, 115 A.3d 423 (Supreme Court will enforce plain language of statute according to its terms where language is clear and unambiguous); City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 11, 186 Vt. 332, 980 A.2d 226 ("[W]here two statutes cover the same subject and one is more specific than the other, we harmonize them by giving effect to the more specific provision according to its terms." (citation omitted)); see also Stevenson v. Capital Fire Mut. Aid Sys., Inc., 163 Vt. 623, 625, 661 A.2d 86, 88 (1995) (explaining that more specific statutory provision will prevail according to its terms over more general statutory provision). We agree with appellee that adopting Allco's interpretation of 30 V.S.A. § 234 would create an illogical result, allowing anyone to appeal and effectively obviating the more specific language found in 30 V.S.A. § 12. See Ran-Mar, Inc. v. Town of Berlin, 2006 VT 117, ¶ 5, 181 Vt. 26, 912 A.2d 984 ("We construe all parts of the statutory scheme together, where possible, as a harmonious whole . . . and we will avoid a construction that would render the legislation ineffective or irrational." (citation and quotation omitted)).[4]

¶ 17.    Finally, we do not address Allco's arguments regarding the hearing officer's denial of its second motion to intervene. We agree with appellee that Allco's second motion to intervene was procedurally improper. We are not persuaded by any of Allco's arguments to the contrary, which attempt to recharacterize the filing below and rely heavily on out-of-state case law without directly addressing the clear holding of relevant Vermont case law. Having appealed the Board's

---

[4] We do not mean to suggest that the remedy for erroneously denying intervention of right or exceeding the bounds of discretion in denying permissive intervention cannot include vacating a decision on the merits. We clarify only that the issues presented on appeal of a denial of a motion to intervene are those directly germane to that motion.

intervention order to this Court in January 2016, jurisdiction over the intervention issue was transferred from the Board to this Court. See Kotz v. Kotz, 134 Vt. 36, 38, 249 A.2d 882, 884 (1975) ("In this jurisdiction, it has long been the rule established by judicial decision that when a proper notice of appeal from a final judgment or order of the lower court is filed the cause is transferred to this Court, and the lower court is divested of jurisdiction as to all matters within the scope of the appeal."); Downer v. Battles, 103 Vt. 201, 201, 152 A.2d 805, 805-06 (1931) ("The effect of an appeal, when perfected, is to remove from the jurisdiction of the trial court all questions concerning the validity or correctness of the judgment or order appealed from."); In re Joint Petition of Green Mountain Power Corp., et al., No. 7628, 2011 WL 4889191 (Vt. P.S.B. Oct. 3, 2011) (applying Kotz rule in context of Board proceeding); see also Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

¶ 18.   Even if the Board had jurisdiction over the second motion to intervene, we would not consider it.  Putting aside that Allco never sought Board review of the second decision, the second intervention request, filed more than four months after the intervention deadline set by the hearing officer and a month after the technical hearing in this case, was repetitive and untimely. Notwithstanding Allco's claim that it needed to review the Department's actions before it could satisfy the "inadequate representation" requirement, Allco's position continued to essentially rest on the same argument as to how PURPA should be implemented in Vermont.  As one court has explained, when a motion to intervene is denied, "the proper procedure is to pursue an immediate appeal, and not to file repetitive motions pestering the [trial] court.  This is true regardless of how the motions are labeled where the substance of the motions and purported justification for intervention remain unchanged."  Plain v. Murphy Family Farms, 296 F.3d 975, 980 (10th Cir. 2002).  Allco had ample opportunity to raise grounds for intervention in its first filing, and it is not

10

fair to the Board or the parties to allow it a second opportunity to seek the same relief, particularly when it came after the evidence was completed, and only shortly before the hearing officer rendered the decision on the merits. We thus do not address Allco's arguments that the hearing officer erred in denying its second intervention motion.

¶ 19. We turn now to the merits of the issues that are properly before us: (1) whether Allco established the right to intervene in its first motion under PSB Rule 2.209(A); and (2) whether the PSB erred in denying Allco permissive intervention under Rule 2.209(B). Although we have not clearly explained the standard of review for an appeal of a decision to deny intervention as a matter of right, our decision in In re Vermont Public Power Supply Auth., 140 Vt. at 431-32, 440 A.2d at 142-43, suggests that we review the determination de novo, and this is consistent with our standard of review for questions of law. Thus, we apply this standard to the Board's decision that Allco is not entitled to intervene as a matter of right. We recognize, of course, that we give deference to the Board's interpretation of statutes it implements and its rules. See Grice v. Vt. Elec. Power Co., 2008 VT 64, ¶ 7, 184 Vt. 132, 956 A.2d 561 ("[A]bsent a compelling indication of error," we "will not disturb an agency's interpretation of statutes within its particular area of expertise"); Petition of Vt. Elec. Power Producers, Inc., 165 Vt. 282, 288, 683 A.2d 716, 719 (1996) (stating that Supreme Court "give[s] great weight to the Board's interpretations of its own regulations" (citation omitted)). This deference may come into play when we consider whether a right to intervene exists. Permissive intervention is discretionary as provided in Rule 2.209(B); we reverse such a decision only if we find abuse of discretion. See In re MVP Health Ins. Co., 2016 VT 111, ¶ 19, 155 A.3d 111 ("This Court will not interfere with the decision of an administrative board made in the performance of a discretionary duty in the absence of a showing of abuse of discretion resulting in prejudice to one of the parties." (quotation omitted)).

11

¶ 20. Rule 2.209(A) contains three circumstances under which intervention is authorized. Because there is no statutory right to intervene, Allco claims a right to intervene only under the third circumstance: "when the applicant demonstrates a substantial interest which may be adversely affected by the outcome of the proceeding, where the proceeding affords the exclusive means by which the applicant can protect that interest and where the applicant's interest is not adequately represented by existing parties." Rule 2.209(A)(3). This third test has three elements, and Allco must meet all of them to establish a right to intervene.

¶ 21. In ¶ 3 above, we set forth in summary form Allco's argument why it has a "substantial interest which may be adversely affected by the outcome of the [CPG] proceeding." We explain the argument in more detail here. Under the Federal Power Act (FPA), the Federal Energy Regulatory Commission (FERC) has "exclusive authority to regulate sales of electricity at wholesale in interstate commerce." Allco Finance Ltd. v. Klee, 805 F.3d 89, 91 (2d Cir. 2015) (citing 16 U.S.C. § 824(b)(1)). The Public Utilities Regulatory Policies Act (PURPA) provides an exception to this rule. See id. Under PURPA, states may "foster electric generation by certain power production facilities ('qualifying facilities') that have no more than 80 megawatts of capacity and use renewable generation technology." Id. at 91-92 (citing 16 U.S.C. §§ 824a-3, 796(17)(A)). States "may regulate wholesale sales by qualifying facilities, but those facilities must generally receive a price for their electricity equal to the buying utility's 'avoided costs'— that is, those costs that the utility would have otherwise incurred in procuring the same quantity of electricity from another source." Id. at 92 (citing 18 C.F.R. § 292.304(b)(2) and 16 U.S.C. § 824a-3(b)). As Allco argues, PURPA requires an electric utility to buy power from a qualifying facility within its service area at avoided cost. 16 U.S.C. § 824a-3(a); see also 19 C.F.R. 292.303(a)(1), 292.304(d)(2).

¶ 22. Historically, Vermont has implemented PURPA in a "unique way." In re Investigation of Nov. 15, 1990 Rate Design Filing of Vt. Power Exch., 159 Vt. 168, 171, 617 A.2d

12

418, 420 (1992). "Although the obligation to purchase at avoided cost is imposed on each electric utility," the PSB "created statewide rates based on the combined avoided costs of all utilities in Vermont." Id. at 171, 617 A.2d at 419 (citing Vermont Public Service Board, Rule No. 4.100, § 4.104(A)). PSB Rule 4.100 implements PURPA, 16 U.S.C. § 824a-3. See PSB Rule 4.102 (identifying purpose of rule). The Department of Public Service must "annually determine the avoided capacity and energy costs of the Vermont composite electric utility system," and "file proposed rate schedules with the Board for approval." PSB Rule 4.104(E). After holding a hearing, the Board must "approve or modify such schedules." Id. Each utility must "purchase a percentage of the power produced by a qualifying facility," and "[t]he percentage is equal to each utility's pro-rata share of the total Vermont retail kilowatt-hour sales for the previous calendar year." In re Investigation of Nov. 15, 1990 Rate Design Filing of Vt. Power Exch., 159 Vt. at 171-72, 617 A.2d at 419-420 (citing PSB Rule 4.104(A)).

¶ 23.    "Because no single utility is contracting to purchase power from a qualifying facility, Vermont's PURPA compliance system requires an intermediary to purchase the power, distribute it and pay the producer." Id. At the time of the decision here, VEPP Inc. was the designated purchasing agent, and it operated under a contract with the Board. QFs may also negotiate and enter into voluntary bilateral contracts with Vermont utilities. See PSB Rule 4.102(B) ("This rule shall not be construed as prohibiting voluntary contracts with terms different from the terms contained herein."). The utilities' decision whether to buy power in this manner is entirely voluntary, except for the output of small power producers with an installed capacity of one hundred kilowatts or less. PSB Rule 4.104(B). Under Rule 4.100, the utilities are under no legal obligation to buy power directly from a QF. Citing other FERC rulings, FERC has stated that the PSB's "Rule 4.100 program is [its] implementation of PURPA and Rule 4.100 has been found [by FERC] to be consistent with PURPA." In re Otter Creek Solar LLC, 143 FERC ¶ 61,282 (citing cases) (rejecting petition requesting that FERC initiate enforcement action against PSB

13

under PURPA), https://www.ferc.gov/CalendarFiles/20130627144133-EL13-60-000.pdf [https://perma.cc/ZUX5-K4G7].

¶ 24. In light of this background, it is clear that Allco's main purpose for intervening in this CPG proceeding is to attack the Rule 4.100 implementation system and, if successful, to prevent GMP, as a competitor, from building its own source of renewable electrical energy. The Board reasoned that Allco met none of the three requirements of Rule 2.209(A)(3) because it had no substantial interest that would be adversely affected by the issuance of the CPG, it had alternative means to protect its interest, and its interest is adequately represented by the Department of Public Service. While we agree with the reasoning of the Board, we rest our decision on the conclusion that Allco had alternative ways to pursue its claim and advance its interests rather than intervening in a CPG proceeding.

¶ 25. The Board identified two alternatives: (1) to negotiate a PURPA contract with the designated purchasing agent under Rule 4.104, or (2) to bring a complaint directly against GMP under 30 V.S.A. § 208 alleging that the utility violated PURPA by not entering into a contact with Allco. Because Allco alleged that GMP violated federal law, the hearing officer concluded that Allco had available a suit directly against GMP under 42 U.S.C. § 1983. Indeed, the record indicates that Allco has brought such litigation in other jurisdictions and such litigation has been brought by others in the Vermont federal courts. See Allco Renewable Energy Ltd. v. Mass. Elec. Co., 208 F. Supp. 3d 390 (D. Mass. 2016) (Allco sued electric company and various Massachusetts public officials seeking redress for alleged PURPA violations, including claim that electric company violated PURPA by refusing to enter into long-term contract to purchase electric energy from Allco's solar energy projects at specified rate and that regulations cited as basis for refusal are inconsistent with PURPA and therefore invalid); Otter Creek Solar, LLC v. Green Mountain Power Corp., No. 1:16-cv-00013-jgm, 2016 WL 5349739 (Sept. 23, 2016) (Otter Creek Solar alleged that GMP violated FPA and PURPA because GMP obligated to purchase any and all

14

energy and capacity offered to it by Otter Creek Solar's QFs and refused to do so; alternatively, it argued that if GMP had no obligation to purchase its output because VEPP, Vermont's designated purchasing agent, had such obligation, then VEPP violated FPA and PURPA; suit dismissed for failure to exhaust administrative remedies).  We add to this list the availability of a suit in Vermont Superior Court pursuant to 3 V.S.A. § 807 against the Board for a declaration that Rule 4.100 violates PURPA or a request for such a declaratory judgment from the Board.  See Barnet Hydro Co. v. Pub. Serv. Bd., 174 Vt. 464, 807 A.2d 347 (2002).  Many of these remedies more directly address Allco's arguments than does intervention into a limited proceeding that does not directly involve the obligation to contract or the rates GMP can charge to ratepayers.  We conclude that the CPG proceeding does not "afford the exclusive means by which" Allco can protect its interests and affirm the decision of the Board to deny intervention as of right.

¶ 26.  Much of the Board's analysis also applies to whether permissive intervention should be allowed under Rule 2.209(B).[5]  The Board also found that intervention to raise the specified arguments "will unduly delay the proceeding or prejudice the interests of existing parties or of the public."  We can reverse this decision only if we find that it was made for reasons that are clearly untenable, or there is a clear showing of error, and therefore there was an abuse of discretion.  In re Costco Stormwater Discharge Permit, 2016 VT 86, ¶ 39, 151 A.3d 320.  We find

---

[5]  Allco raised another issue that it sought to pursue if permissive intervention were allowed: whether GMPSR would receive the favorable federal income tax treatment on which its expected costs of production were based.  It alleged in its motion to intervene that "Allco's participation would be useful for the Board . . . to review the tax risks involved in a partnership flip transaction when one of the utilities is an electric utility that must normalize."  The Board did not specifically address this issue, and it became a major part of Allco's second motion to intervene with a detailed argument why GMPSR would not receive the favorable tax treatment.  As we held above, the second motion was untimely and improper because the appeal of the denial of the first motion was already before this Court.  We do not read the first motion as stating the tax issue as a permissive ground for intervention; indeed, Allco dropped it from its motion for reconsideration after the hearing officer denied that motion.  Moreover, the tax issue was clearly a side-show in the context of the CPG proceeding because a CPG did not guarantee that GMPSR would be able to charge any particular rate or that GMP could charge ratepayers any particular rate for GMPSR output.

no abuse of discretion here.  Allco sought to make the limited CPG proceeding a platform for a broad challenge to the methods of PURPA compliance in Vermont.  We conclude that it was within the Board's discretion to require that such a challenge be made in a proceeding suited to resolve the specific issues raised and in which all affected parties could fully participate.  We find no abuse of discretion.

     Affirmed.

FOR THE COURT:

_____

Associate Justice
